# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DR. JANINE CHARBONEAU | § | |
| | § | |
| v. | § | Civil Action No. 4:13-CV-678 |
| | § | (Judge Mazzant/Judge Nowak) |
| TERRY BOX, ET AL. | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the reports of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On February 5, 2016, the report of the Magistrate Judge (Dkt. #42) was entered containing proposed findings of fact and recommendations that Defendant the SPCA of Texas's ("the SPCA") 12(b)(6) Motion to Dismiss ("SPCA Motion to Dismiss") (Dkt. #39) be granted. On February 16, 2017, the report of the Magistrate Judge (Dkt. #54) was entered containing proposed findings of fact and recommendations that (1) Defendants Collin County Sheriff's Department's, Danny Davis's, Russell Driver's, Misty Brown's, James Kirk's, and Chris Ware's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Collin County Motion to Dismiss") (Dkt. #41) be granted; (2) Plaintiff's First Motion to Quash and Motion for Emergency Protective Order ("Motion to Quash") (Dkt. #52) be denied; and (3) all other named, but unserved, Defendants be dismissed. Having received the reports and recommendations of the Magistrate Judge (Dkt. #42; Dkt. #54), having considered each of Plaintiff's objections (Dkts. #45-46; Dkts. #59-60), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's reports (Dkt. #42; Dkt. #54) as the findings and conclusions of the Court.

# BACKGROUND

## I.    *Introduction*

Plaintiff Janine Charboneau filed this suit on November 18, 2013, asserting myriad constitutional and statutory claims against numerous persons and entities allegedly involved in events related to Plaintiff's animal cruelty conviction (Dkt. #1; Dkt. #38 (Plaintiff's Amended Complaint)).  The Court substantially adopts the Magistrate Judge's findings of fact herein.[1]  Given the number of named Defendants and Plaintiff's diffuse allegations, the Court has attempted to identify at the outset certain groups of Defendants against whom Plaintiff raises the same or similar claims and who are discussed herein.

## II.    *Plaintiff's Allegations*

### A.    *Collin County and the Individual County Defendants*

Plaintiff alleges various persons and entities associated with or employed by Collin County were involved in the events giving rise to her claims here.  Plaintiff identifies Collin County Animal Control Officers Danny Davis ("Davis") and Misty Brown ("Brown"), as well as Collin County Sheriff Terry Box ("Box"), Collin County Sheriff's Department, Collin County Animal Control Services, and the City of Lucas specifically in her factual allegations.  Plaintiff also names the following Defendants but fails to allege their involvement in any of these events: Russell Driver, James Kirk, Chris Ware, Nathan Holton, Matt Shaheen, Chris Hill, Duncan Webb, Cheryl Williams, Sarah Fox, and Brandon Wannacott.  Defendants Davis, Driver, Brown, Kirk, and Ware make clear through their Motion to Dismiss that Holton, Shaheen, Hill, Webb, Williams, Fox, and Wannacott each are (or were) employed by or representative of Collin County.  Accordingly, the

---

[1] The Magistrate Judge's findings of fact are contained in the Background sections of the February 5, 2016 report and recommendation (Dkt. #42 at 1-3) and the February 16, 2017 report and recommendation (Dkt. #54 at 2-5), respectively.

Court hereinafter and collectively refers to Holton, Shaheen, Hill, Webb, Williams, Fox, Wannacott, Davis, Driver, Brown, Kirk, and Ware as the "Individual County Defendants."

Plaintiff alleges that, in November 2011, Davis received an anonymous phone call about potential animal cruelty involving horses at 2120 Estates Parkway, Lucas, Texas (the "Property")—Plaintiff's mother's home (Dkt. #38). Plaintiff asserts Davis visited the Property and later in the day caused Collin County, Collin County Animal Services, and certain Collin County enforcement officials to seize a number of dogs from the Property (Dkt. #38 at 15-17). Plaintiff alleges Collin County Sheriff's Department and certain of its representatives took part in this seizure.[2]

### B. The Church Defendants

The next day, Plaintiff claims Jim Kaya ("Kaya") and Cheryl Reeves ("Reeves"), members of the Church of Latter-Day Saints (the "Church") came to the Property, presumably with a Collin County Animal Control officer (Dkt. #38 at 18-19, 38). Certain unidentified individuals then seized Plaintiff's horses on behalf of Collin County (Dkt. #38 at 18-19). Plaintiff alleges that Collin County officials and certain members of the Church entered the Property the same day and removed and/or moved her personal property from or around the Property, which Plaintiff allowed, purportedly under threat of condemnation (Dkt. #38 at 20). Plaintiff also claims that Pamela Paxton ("Paxton"), a member of the Church, drove her to Collin County Animal Services to sign a "release" with Brown and that Paxton encouraged Plaintiff to sign it (Dkt. #38 at 20).

Regarding other persons and entities associated with the Church, Plaintiff further alleges Bishop Scott Graham ("Graham") and other members of the Church conspired with Affordable

---

[2] Plaintiff also alleges the City of Lucas and members of the Church of Latter-Day Saints who lived nearby attempted to boost real-estate values in the area by re-designating a public road leading to the Property as a private road (Dkt. #38 at 18-22, 27).

Dumpster Company ("Affordable") to conduct the collection and disposal of large amounts of Plaintiff's personal property from the Property (Dkt. #38 at 27-33). Throughout the Amended Complaint Plaintiff refers to these and other related Defendants as "the [M]ormons," whom she alleges associated themselves with this conspiracy to deprive her of her animals and personal property (*e.g.*, Dkt. #38 at 27-29). Plaintiff also has identified Craig Paxton, Ron Haas, and Janice Haas as Defendants here, but does not ever detail these persons' involvement with the alleged scheme in the Amended Complaint. For ease of reference, the Court hereinafter and collectively refers to Kaya, Paxton, Graham, Reeves, Craig Paxton, Ron Haas, Janice Haas, the Church, and Affordable as the "Church Defendants."

### C. *Animal Rescue Defendants*

Following the alleged seizure, Plaintiff asserts, various animal rescue entities and associated persons sold the dogs "without clear title" and without compensation (Dkt. #38 at 21-22). Plaintiff identifies Defendants Sheree's Dog Rescue, Lynda Van Asveld, Texas Sporting Dog Rescue, Inc., Mazie's Mission, and Erin Shults in reference to these allegations. Alongside Defendants T.S. Cannon (and the Cannon Veterinary Clinic), whom Plaintiff alleges improperly treated one of her dogs (Dkt. #38 at 36-37), the Court hereinafter and collectively refers to these Defendants as the "Animal Rescue Defendants."

## III. *Conviction and Procedural History*

Subsequently, Plaintiff was arrested and charged with cruelty to non-livestock animals (Dkt. #38 at 18). *See Charboneau v. State*, No. 05-13-340-CR, 2014 WL 7476392, at *2 (Tex. App.—Dallas Dec. 30, 2014, no pet.).[3] Following a trial, Plaintiff was convicted and a jury

---

[3] The Court agrees with the Magistrate Judge that Plaintiff's conviction relates only to non-livestock "animals" (Dkt. #38 at 18). *See also Charboneau*, 2014 WL 7476392, at *2. Texas law distinguishes between "animals," such as dogs, and "livestock animals," such as horses. Tex. Penal Code § 42.092(a)(2) (defining "animal"), (a)(6) (defining

assessed punishment at 365 days' confinement and a $2,000 fine. *Charboneau*, 2014 WL 7476392, at *2. The jury recommended that the sentence be suspended, and the trial court placed Plaintiff on community supervision for twenty-four months, assessed ten days' confinement in jail, and, among other conditions, ordered that Plaintiff could not thereafter "possess any animals" (Dkt. #41, Exhibit 1).[4] Plaintiff appealed and the Fifth District Court of Appeals in Dallas, Texas, affirmed her conviction. *Charboneau*, 2014 WL 7476392, at *2. Plaintiff appealed her conviction no further and, as a result, the Fifth District Court of Appeals issued its Mandate on March 11, 2015.

Meanwhile, Plaintiff filed the instant action on November 18, 2013, prior to the Fifth District Court of Appeals' affirmance of her conviction, asserting causes of action for (1) violations of her Fourth, Fifth, Eighth, and Fourteenth Amendment rights arising under 42 U.S.C. § 1983; (2) conspiracy to interfere with her civil rights under 42 U.S.C. § 1985(3); (3) abuse of process; (4) disability discrimination under the Americans with Disabilities Act and/or the Americans with Disabilities Act's amended counterpart (collectively, "ADAA"); and (5) conversion against approximately fifty-seven (57) Defendants (Dkt. #1; Dkt. #38). On January 7, 2014, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis*, but ordered that issuance of service to Defendants be determined at a later date (Dkt. #6). The Court stayed the case pending the outcome of Plaintiff's then-pending state court appeal of her conviction (Dkt. #7). During the pendency of the stay, and on April 25, 2014, Plaintiff filed an identical,

---

"livestock animal" by reference); *id.* § 42.09(b)(5) ("Livestock animal means: . . . a horse, pony, donkey, mule, or hinny[.]").

[4] The Court notes the state court did not define "animals" or reference the aforementioned statutory distinction in the Order Placing Defendant on Community Supervision (*see* Dkt. #41, Exhibit 1). Plaintiff objects to the Magistrate Judge's inclusion of this fact in the report's fact recitation, claiming such "is irrelevant" (Dkt. #59 at 40). To the contrary, this factual finding provides crucial support for the Magistrate Judge's legal finding that Plaintiff's claims regarding the horses (and personal property) are not *Heck*-barred (*see* Dkt. #54 at 24-26). The Court discusses this finding more fully *infra* in addressing Plaintiff's objections.

second lawsuit in the Eastern District of Texas, Marshall Division, asserting the same factual allegations and causes of action against the same defendants. *See* Dkt. #1 in Eastern District of Texas Case No. 4:14-cv-385. That case was later consolidated with the instant litigation and also stayed (Dkt. #21). On April 17, 2015, certain Defendants filed a Motion to Lift Stay and Notice of Finality of Criminal Conviction of the Plaintiff, notifying the Court that Plaintiff's conviction was final as of March 11, 2015 (Dkt. #35). Accordingly, on April 24, 2015, the Court lifted the stay and ordered Plaintiff to file an Amended Complaint (Dkt. #37). On May 26, 2015, Plaintiff filed an Amended Complaint, which is the live pleading in this action (Dkt. #38).

On June 16, 2015, the SPCA filed the SPCA Motion to Dismiss (Dkt. #39). Defendants Collin County Sheriff's Department, Davis, Driver, Brown, Kirk, and Ware filed the Collin County Motion to Dismiss on January 18, 2016 (Dkt. #41). The Magistrate Judge entered a report and recommendation on February 5, 2016, recommending the SPCA Motion to Dismiss be granted (Dkt. #42). Subsequently, Plaintiff filed a Motion to Deny Defendants' Motion to Dismiss Due to Lack of Personal Jurisdiction (Dkt. #43) on February 18, 2016, which the Court construes as a response to Defendants' Motion to Dismiss. Also on February 18, 2016, Plaintiff filed her objections to the February 5, 2016 report and recommendation (Dkt. #45). On February 29, 2016, Defendants Collin County Sheriff's Department, Davis, Driver, Brown, Kirk, and Ware filed a Reply (Dkt. #47). Plaintiff filed a Surreply (Dkt. #50) and the Motion to Quash (Dkt. #52) on March 22, 2016. The Magistrate Judge entered a report and recommendation on February 16, 2017, recommending the Collin County Motion to Dismiss (Dkt. #41) be granted, Plaintiff's Motion to Quash (Dkt. #52) be denied, and all other named but unserved Defendants be dismissed (Dkt. #54). Plaintiff filed her objections to the February 16, 2017 report and recommendation on March 17, 2017 (Dkt. #59).

The Court notes certain Defendants and/or groups of Defendants have been served, while others have not. Specifically, Davis, Driver, Kirk, Brown, and Ware are each Individual County Defendants who have been served. Collin County Sheriff's Department, a Collin County entity, has been served. The SPCA also has been served. No other Defendant has been served. In particular, Holton, Box, Shaheen, Hill, Webb, Williams, Fox, and Wannacott are each Individual County Defendants who have not been served. Neither Collin County nor Collin County Animal Services has been served. None of the Animal Rescue Defendants nor the Church Defendants have been served. And the State of Texas has not been served. Because the Court finds Plaintiff's claims against each and every Defendant fail under the exacting standard applied when screening an *in forma pauperis* complaint for frivolousness, the Court will proceed herein to examine Plaintiff's claims against all Defendants under this standard. *See, e.g.*, *DeMarsh v. City of Denton*, No. 4:16-cv-89, 2016 WL 5402946 (E.D. Tex. Aug. 30, 2016), *report and recommendation adopted*, 2016 WL 5369493 (Sept. 26, 2016) (determining *pro se* plaintiff's claims should be dismissed under Section 1915 standard for frivolousness notwithstanding that defendant also had filed a Rule 12(b)(6) motion to dismiss).[5]

### PLAINTIFF'S OBJECTIONS

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). As a threshold matter, the Court notes no party specifically objects to the Magistrate Judge's findings that Plaintiff's 42 U.S.C. § 1985(3), abuse of process, and conversion claims should be dismissed (*see* Dkt. #54 at 26-30). Neither do any of the Parties object to the Magistrate Judge's finding that

---

[5] The Court further explains the distinction between the frivolousness analysis and that under Rule 12(b)(6) *infra* in its analysis of objection three.

Plaintiff's Motion to Quash (Dkt. #52) should be denied (*see* Dkt. #54 at 30).[6]  In light of the Parties' failure to object to these findings, and after de novo review of the record, the Court holds these findings are correct.  The Court now turns to Plaintiff's objections, which the Court discerns are as follows: (1) the Magistrate Judge lacks authority to hear and consider Plaintiff's claims because all Parties have not consented to such (Dkt. #45 at 1, 6; Dkt. #46; Dkt. #59 at 6-12, 35); (2) the Magistrate Judge improperly relies upon *Charboneau*, 2014 WL 7476392, in the February 5, 2016 report and recommendation; (3) the Magistrate Judge improperly finds Plaintiff fails to state a claim against (a) the Church Defendants, (b) Collin County and the City of Lucas, and (c) the SPCA such that dismissal under Rule 12(b)(6) and/or 28 U.S.C. § 1915(e) is appropriate against those Defendants (Dkts. #45-46; Dkt. #59 at 14-18, 22-23, 36); (4) the Magistrate Judge improperly finds the Individual County Defendants are entitled to qualified immunity (Dkt. #59 at 17, 19-38); (5) the Magistrate Judge improperly finds Plaintiff fails to state an ADAA claim against any Defendant; (6) the Magistrate Judge erroneously concludes *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's claims that Collin County took without compensation Plaintiff's horses and personal property (Dkt. #59 at 41); (7) the Magistrate Judge improperly considers the SPCA's Motion to Dismiss because the SPCA has no attorney of record and/or because the SPCA has not been served in this case (Dkts. #45-46); and (8) the Magistrate Judge erroneously characterizes certain of Plaintiff's alleged facts (Dkt. #45 at 10-11; Dkt. #46 at 7; Dkt. #59 at 5, 7-8, 41-42).  Plaintiff also raises new claims and/or arguments in her objections, namely (a) the Collin County Motion to Dismiss and the SPCA Motion to Dismiss were untimely

---

[6] To the extent Plaintiff attempts to object to these findings, she has failed to do so specifically.  Plaintiff does object to the report and recommendation generally, asserting "it does not follow federal law, the [ADAA], or the Constitutional Amendments" (Dkt. #59 at 12).  But this sweeping assertion exemplifies the sort of "general objection[]" that the Fifth Circuit has held district courts "need not consider[.]"  *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1412 (5th Cir. 1996) (en banc).  Notwithstanding this deficiency, the Court has undertaken and performed a de novo review of the Magistrate Judge's report and recommendation herein.

filed and, accordingly, Plaintiff should receive default judgment against all Collin County Defendants,[7] (b) the Collin County Defendants consented to suit when they sought to transfer and/or consolidate Plaintiff's second-filed action in the Eastern District of Texas, Marshall Division, with the present case, and (c) the Magistrate Judge should be recused or disqualified for demonstrating bias against Plaintiff (Dkt. #59 at 5-7, 9-10, 32). The Court considers the objections in turn.

*Objection 1:   Use of Magistrate Judge*

Plaintiff objects to the Court's use of the Magistrate Judge in this case, asserting she has given no permission "for the Magistrate to sign and order or even handle any part of this case" (Dkt. #59 at 35; *see also* Dkts. #45-46). The SPCA, for its part, argues federal law permits the Court to refer matters to a magistrate judge for consideration and recommendations, and that the Court makes the ultimate determination on any such dispositive matters (Dkt. #49).

The Federal Magistrates Act, 28 U.S.C. § 636, permits "a [full Article III] judge [to] designate a magistrate judge to hear and determine any pretrial matter pending before the court, except [certain dispositive motions]" and further "permits a judge [to] designate a magistrate judge to . . . submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any [of those excepted] motion[s] . . . ." 28 U.S.C. § 636(b)(1)(A)-(B) (2012). The Court's Local Rules also provide district judges wide latitude in referring matters and motions for a magistrate judge's review. E.D. Tex. Local Rule CV-72(d). A magistrate judge may, therefore, recommend disposition of a motion to dismiss to the district judge, who will then conduct a de novo review of those portions of the recommendation

---

[7] Plaintiff does not define "Collin County Defendants." The Court presumes Plaintiff intends through this reference to capture all Defendants employed by Collin County and/or the City of Lucas, such as the Individual County Defendants, as well as Collin County and the City of Lucas (and related entities, such as the Collin County Sheriff's Department).

to which parties raise specific, timely objection. 28 U.S.C. § 636(b)(1)(C). The Fifth Circuit has repeatedly recognized the statutory authority to designate a magistrate judge for such purpose and has clearly upheld the requirement to file such timely, specific objections. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

Here, the Magistrate Judge made recommendations as to the SPCA Motion to Dismiss (Dkt. #42), the Collin County Motion to Dismiss, Plaintiff's Motion to Quash, and all other named Defendants (Dkt. #54). The Magistrate Judge acted within the bounds of statutory authority in issuing such reports and recommendations, *Douglass*, 700 F.3d at 1417, and the Court now properly reviews those portions of the Magistrate Judge's reports and recommendations to which Plaintiff raises specific, timely objections. The Court overrules this objection.

### Objection 2: *Magistrate Judge's Reliance on* **Charboneau v. State**

Plaintiff objects to the Magistrate Judge's reliance in the February 5, 2016 report and recommendation (Dkt. #42) on the facts as reported in *Charboneau v. State*, a state court appellate opinion relating to Plaintiff's animal cruelty conviction (Dkts. #45-46). *See also Charboneau*, No. No. 05-13-340-CR, 2014 WL 7476392, at *2 (Tex. App.—Dallas Dec. 30, 2014, no pet.). Plaintiff asserts reliance on another legal opinion's recitation of facts violates the rule against hearsay.

Here, the Magistrate Judge found in an order made within the February 16, 2017 report and recommendation that a court's reliance on another legal opinion to establish facts (other than the fact that the proceeding underlying that opinion occurred) would generally violate the rule against hearsay (*see* Dkt. #54 at 10-11). The Magistrate Judge accordingly "decline[d] to take notice of the discrete facts articulated in the Fifth District Court of Appeal's ("Fifth Court") *Charboneau* opinion, but [did] take notice of the fact of the [existence of the] judgment, conviction, and

underlying proceedings" in that case (Dkt. #54 at 11-12). Indeed, in the February 16, 2017 report and recommendation, the Magistrate Judge relies upon the Fifth Court's opinion only to show "such proceedings occurred and to provide procedural background[,]" as well as to explain that the resulting sentence from the underlying criminal proceedings related wholly to her conviction for cruelty to non-livestock animals (Dkt. #54 at 2 n.1, 3 & n.5). The Magistrate Judge also refers to the Fifth Court's opinion in the February 5, 2016 report and recommendation, but again only to establish that Plaintiff had been convicted on (non-livestock) animal cruelty charges and to describe the punishment Plaintiff received incident to that conviction (Dkt. #42 at 1-2).

The Court finds no improper reliance by the Magistrate Judge upon review of the record. Moreover, such reliance is appropriate, as neither the procedural history of the case nor the sentence imposed are disputed. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829, 831 (5th Cir. 1998) (A court may take notice of another court's judgment "for the limited purpose of taking as true the action of the [other] court in entering judgment . . . ."); *Bauer v. Texas*, 341 F.3d 352, 362 n.8 (5th Cir. 2003) (granting motion to take judicial notice "of public court records and information . . . not in dispute"). The Court overrules Plaintiff's objection.

### Objection 3:  Failure to State a Claim Findings

Plaintiff also variously objects to the Magistrate Judge's findings that Plaintiff fails to state a claim against any of the Church Defendants, Collin County and the City of Lucas, and the SPCA (Dkts. #45-46; Dkt. #59). Because the Magistrate Judge recommended that Plaintiff's claims against these Defendants be dismissed either under Rule 12(b)(6)—where the Defendant has moved for dismissal—or under 28 U.S.C. § 1915(e) ("Section 1915")—where the Defendant has not—the Court begins by outlining the standards governing Rule 12(b)(6) and Section 1915 dismissals.

A party may move under Federal Rule of Civil Procedure 12(b)(6) for dismissal of a plaintiff's complaint where the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12. Further, Rule 8 requires that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded facts contained in a plaintiff's complaint and view them in the light most favorable to the plaintiff-nonmovant. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Taken as true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level[,]" in order for the plaintiff to survive the motion to dismiss. *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Indeed, the U.S. Supreme Court has explained that, under *Twombly*, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows [that], 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—"that the pleader is entitled to relief."'" *Id.* The U.S. Supreme Court established a two-step approach in *Iqbal* for assessing the sufficiency of a complaint in the 12(b)(6) context. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption

of truth." *Iqbal*, 556 U.S. at 681. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

Relatedly, district courts have authority under Section 1915 to dismiss a complaint *sua sponte* where the complaint, *inter alia*, "fails to state a claim on which relief may be granted[] . . . ." 28 U.S.C. § 1915(e)(2)(B); *see Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Kenechukwu v. Holder*, No. 9:15-CV-62, 2016 WL 3961714, at *1-2 (E.D. Tex. June 10, 2016), *report and recommendation adopted*, 2016 WL 3926576 (E.D. Tex. July 21, 2016). A court may dismiss a complaint under this standard "if it lacks an arguable basis in law or fact." *Siglar*, 112 F.3d at 193; *see Moore v. Mabus*, 976 F.2d 268, 269-70 (5th Cir. 1992) (explaining the distinction between factual and legal frivolousness in *in forma pauperis* complaints). Although courts construe *pro se* filings liberally in this context, *see, e.g.*, *Flanagan v. LaGrone*, No. 9:16-CV-59-MHS, 2016 WL 4163557, at *1 (E.D. Tex. July 6, 2016), *report and recommendation adopted*, 2016 WL 4140751 (E.D. Tex. Aug. 3, 2016), dismissal is appropriate where the claims have no chance of success, *cf. Booker v. Koonce*, 2 F.3d 114, 115-16 (5th Cir. 1993) (noting dismissal of claims with "some chance" of success is inappropriate at screening stage but affirming dismissal where *pro se* plaintiff's claim "[was] based upon an indisputably meritless legal theory"). And though the Section 1915 standard demands more than the Rule 12(b)(6) standard in certain

circumstances, *see Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989), where "the plaintiff is not entitled to relief" on the claims presented, the standards largely are the same, *Kenechukwu*, 2016 WL 3961714, at *1-2 (citing *Newsome v. E.E.O.C.*, 301 F.3d 227, 231 (5th Cir. 2002) (per curiam)). *See also Neitzke*, 490 U.S. at 328 ("To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915[(e)] both counsel dismissal."). The Magistrate Judge recommended that the Court dismiss the Church Defendants, Collin County, the City of Lucas, and certain of the Individual County Defendants under Section 1915, as the Court withheld service to those Defendants in order to properly screen Plaintiff's complaint (*see* Dkt. #59 at 15-19). The Magistrate Judge also recommended that the Court dismiss certain of the Individual County Defendants as well as the SPCA under Rule 12(b)(6), as certain of the Individual County Defendants and the SPCA have filed motions to dismiss pursuant to same (Dkt. #42). As noted *supra*, for purposes of its de novo review herein, the Court considers Plaintiff's claims against each and every Defendant under Section 1915e's heightened standard, rather than under the 12(b)(6) standard, for failure to state a claim.

## A.   *Church Defendants*

Plaintiff objects to the Magistrate Judge's findings that the Court should dismiss Plaintiff's Section 1983 claims against the Church Defendants under Section 1915(e) (Dkt. #59 at 36). Plaintiff asserts she has alleged "joint action" between the government and the Church Defendants sufficiently to show the Church Defendants engaged in "state action" so as to render themselves liable under Section 1983.

Sufficiently pleading a Section 1983 claim requires a plaintiff to allege (1) "the defendant has deprived [the plaintiff] of a right secured by the 'Constitution and laws' of the United States" and (2) "the defendant acted 'under color of law.'" *Adickes v. S. H. Kress & Co.*, 398 U.S. 144,

150 (1970). Where the plaintiff claims a private party, rather than a state actor, violated Section 1983, the plaintiff must allege the private party defendant "[was] a willful participant in joint activity with the State or its agents" in order to show the defendant "act[ed] 'under color' of law . . . ." *Id.* at 152. Only where a plaintiff alleges "an agreement between the private and public defendants *to commit an illegal act*" will the plaintiff have stated a claim under Section 1983 against a private party defendant. *Cinel v. Connick*, 15 F.3d 1338, 1343-44 (5th Cir. 1994) (emphasis added) (affirming dismissal under 12(b)(6) of *pro se* plaintiff complaint where plaintiff failed to allege sufficiently such agreement).

Here, the Court agrees with the Magistrate Judge that Plaintiff fails to allege that the Church Defendants conspired with governmental entity or agent to commit an illegal act intending to deprive Plaintiff of her constitutional and/or statutory rights (*see* Dkt. #54 at 15-17). Plaintiff alleges that the Church Defendants and Collin County (and/or its agents) attempted to increase real estate development near the Property (Dkt. #38 at 9). Plaintiff alleges that, in doing so, these Defendants in fact deprived her of her rights—Plaintiff does not allege that these Defendants conspired *with the purpose* of depriving Plaintiff of her rights and/or committing an illegal act. *See Cinel*, 15 F.3d at 1343-44. Further, Plaintiff's allegations that the Church Defendants conspired with state actors are wholly conclusory: Plaintiff repeatedly states the legal conclusion of conspiracy without providing any factual allegations whatsoever that would support such claim (*see, e.g.*, Dkt. #38 at 22). *See Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("The conspiracy allegations made by [plaintiff] are conclusory, and more than a blanket of accusation is necessary to support a § 1983 claim."). Accordingly, the Court finds Plaintiff's Section 1983

claims against the Church Defendants in the Amended Complaint lack even an arguable basis in law.[8]

## B. Collin County and the City of Lucas

Plaintiff also objects to the Magistrate Judge's findings that the Court should dismiss Plaintiff's Section 1983 claims against Collin County and/or the City of Lucas under Section 1915(e) (Dkt. #59 at 17-38). Specifically, Plaintiff seemingly contends neither Collin County nor the City of Lucas may assert the qualified immunity defense because these entities, as municipalities, may not rely on the good faith of the official involved in the deprivation of Plaintiff's rights (*see* Dkt. #59 at 15). Plaintiff asserts, as well, that the City of Lucas and Collin County, in "deciding to go against the law [to transform] the road to [the Property into] a private road from a public road" exhibited a "custom" sufficient to establish municipal liability under Section 1983 (Dkt. #59 at 17-18). Plaintiff also claims the Magistrate Judge erred in finding Collin County and the City not liable under the ADAA (Dkt. #59 at 22-23).[9]

To begin, the Court notes the Magistrate Judge nowhere finds Collin County or the City of Lucas immune from Plaintiff's claims under the qualified immunity doctrine, and neither does the Magistrate Judge find these Defendants may rely—or even that they attempt to rely—upon a good

---

[8] The Court notes Plaintiff seemingly also asserts the Collin County Defendants should face independent liability for engaging in such "joint action" with the Church Defendants (*see* Dkt. #59 at 36). Joint action in this context, however, operates as a proxy for the requisite "state action"—it does not create an independent basis for liability but rather permits plaintiffs to hold non-governmental persons and entities liable for constitutional and/or statutory harms in certain (very limited) circumstances. *See Cinel*, 15 F.3d at 1343. Accordingly, the Court overrules Plaintiff's objection to the extent Plaintiff asserts the Collin County Defendants—each of which are governmental entities or government actors—should face independent liability for their allegedly engaging in "joint action" to deprive Plaintiff of her legal rights.

[9] It appears that, because Plaintiff raises this same claim against the Individual County Defendants, the Magistrate Judge considered this claim in the analysis of the Individual County Defendants' liability. The same reasoning disposes of Plaintiff's claims against each set of Defendants; accordingly, the Court considers this objection *infra* in its analysis of Plaintiff's objections concerning qualified immunity.

faith defense (Dkt. #54 at 17-19). Accordingly, the Court disregards this particular objection as irrelevant.

The U.S. Supreme Court has held that Section 1983 captures claims against municipalities such as the City of Lucas or Collin County. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224, 226-27 (5th Cir. 2008) (applying Section 1983 to county-defendant). Plaintiffs must, however, base claims under Section 1983 against such entities on the entities' use or creation of an official "policy or custom" that "inflicts the injury [for which] the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 691, 94 (concluding "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, . . . on a *respondeat superior* theory"); *see also Hampton Co.*, 543 F.3d at 227 ("[M]unicipal liability under section 1983 requires proof of three elements: (1) a policymaker, (2) an official policy, and (3) violation of constitutional rights whose moving force is the policy or custom." (internal quotations omitted)). An official policy or custom comprises of either one of the following:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Quinn v. Roach*, No. 4:06CV120, 2007 WL 737523, at *3 (E.D. Tex. Mar. 7, 2007), *report and recommendation adopted as modified*, 2007 WL 922233 (E.D. Tex. Mar. 23, 2007), *aff'd*, 326 F. App'x 280 (5th Cir. 2009).

The Court agrees with the Magistrate Judge that Plaintiff fails to allege an official policy or custom through which either Collin County or the City of Lucas acted to deprive Plaintiff of her constitutional rights (Dkt. #54 at 17-19). With regard to purported constitutional violations,

Plaintiff alleges only that Collin County and/or the City of Lucas, acting through its employees and/or the Private Party Defendants, deprived her (and her mother) of certain personal property, horses, and access to the Property via a certain public road (*e.g.*, Dkt. #38 at 27, 41-43). To begin, Plaintiff fails to allege either that municipal officials engaged in any "persistent, widespread practice" of depriving persons or entities of their constitutional rights—Plaintiff merely asserts certain Collin County officers and City of Lucas representatives deprived *her* (and her mother) of such rights, and that Collin County and the City of Lucas should, as a result, face liability. Plaintiff in essence alleges a *respondeat superior* liability theory, which cannot serve as a basis for municipal liability under Section 1983. *See Monell*, 436 U.S. at 691, 94; *Hampton Co.*, 543 F.3d at 227. Further, Plaintiff's claim that the City of Lucas, in re-designating a public road somehow connected to the Property as a private road, has promulgated an official policy that violates Plaintiff's constitutional rights likewise lacks merit. Even assuming a City of Lucas policymaker promulgated an official policy to re-designate the road, Plaintiff fails to allege any facts that would support a finding that such re-designation violated Plaintiff's constitutional rights. Plaintiff states in a conclusory fashion that the re-designation violates her Fifth, Eighth, and Fourteenth amendment rights and/or her rights under the ADAA, but does not allege facts showing such violation(s) occurred because of the re-designation (Dkt. #59 at 18 n.26). *Cf. Arsenaux*, 726 F.2d at 1024. Accordingly, the Court finds Plaintiff's Section 1983 claims against Collin County and the City of Lucas in the Amended Complaint lack even an arguable basis in law.

### C.    *The SPCA*

Plaintiff objects to the Magistrate Judge's findings that the Court should dismiss Plaintiff's claims against the SPCA under Rule 12(b)(6) (Dkts. #45-46). Plaintiff seemingly contends she need not state a claim in order to survive a Rule 12(b)(6) motion to dismiss, citing *Brown v. Budz*,

398 F.3d 904, 913-14 (7th Cir. 2005) (Dkt. #46 at 3). The SPCA responds that Plaintiff misconstrues *Brown*'s holding, arguing the court in that case "still required that the plaintiff sufficiently allege a cause of action" (Dkt. #49 at 2).

The Court agrees with the SPCA. In *Brown*, the Seventh Circuit reversed where the district court granted a 12(b)(6) motion to dismiss because the plaintiff failed to *show* his claims had merit. 398 F.3d at 913-14. The Seventh Circuit noted "the plaintiff does not have to 'show' anything; he need only allege[,]" and that "[a]t this stage of the litigation, we are concerned not with what plaintiff did or did not show, but rather with what plaintiff did or did not allege." *Id.* at 914. Here, the Magistrate Judge found "Plaintiff's *allegations* against the SPCA of Texas are insufficient to state a plausible claim for relief" (Dkt. #42 at 6). Indeed, Plaintiff alleges with respect to the SPCA only that "the SPCA of Texas has already answered. 8411 Stacy Road/FM 720 McKinney, TX 75070; Phone Number: 214-742-the SPCA (7722),Fax: 214-461-1801" (Dkt. #38 at 5). Plaintiff's objections to the Magistrate Judge's February 5, 2016 report and recommendation provide little else from which the Court may discern what, precisely, Plaintiff asserts the SPCA has done (*see* Dkts. #45-46). Plaintiff claims "it appears that the S.P.C.A.'s 'smear campaign' of good AKC and other registrable breeders who are actively working at breeding away from hereditary problems are now all 'puppy mills'" (Dkt. #45). Plaintiff only otherwise states the SPCA should remove such misinformation from the SPCA website "because it is miseducating [sic] future juries in criminal cases" (Dkt. #45 at 10). It is unclear either from Plaintiff's Amended Complaint or her objections what, if any, claim she intends to state against the SPCA or that the SPCA is liable for any of its actions. Failure to "put forward . . . concrete allegations" against a defendant and "[pleading] no facts that could possibly indicate that [a defendant] may be liable" merits dismissal

under Rule 12(b)(6). *Amos v. Palmetto Gov't Benefit Adm'r*, 122 F. App'x 105, 112 (5th Cir. 2005) (per curiam). Accordingly, Plaintiff's claims against the SPCA should be dismissed.

### D. *Individual County Defendants*

Plaintiff objects to the Magistrate Judge's findings that the Court should dismiss Plaintiff's Section 1983 claims against the Individual County Defendants under either Section 1915(e) or Rule 12(b)(6) (Dkt. #59 at 17-38). Plaintiff asserts the Magistrate Judge erred in finding the Individual County Defendants are immune to Plaintiff's Section 1983 claims because the Magistrate Judge incorrectly concluded the Individual County Defendants violated no clearly established statutory or constitutional rights. Specifically, Plaintiff contends the Magistrate Judge committed the following errors in reaching the conclusion the Individual County Defendants should be dismissed: (1) the Magistrate Judge improperly relied upon *Texas State Board of Veterinary Medical Examiners v. Jefferson*, No. 03–14–00774–CV, 2016 WL 768778, at *2 (Tex. App.—Austin Feb. 26, 2016, no pet.), given that the opinion post-dates the Individual County Defendants' alleged wrongdoing (Dkt. #59 at 14-23); (2) the Magistrate Judge failed to find Box and/or Brown liable under Section 1983 in their respective supervisory capacities over those Individual County Defendants that conducted the takings of Plaintiff's horses and personal property; and (3) the Magistrate Judge improperly determined the facts alleged give rise to no violation of Title II of the ADAA (Dkt. #59 at 12-13, 22-23).[10]

The Fifth Circuit has held that, because Section 1983 "simply provides a remedy for the rights that it designates[,] . . . an underlying constitutional or statutory violation is a predicate to liability under [Section] 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (internal

---

[10] The Court has addressed Plaintiff's objections regarding the ADAA collectively in its analysis of Plaintiff's ADAA claims against these and other Defendants, as those findings relate to Plaintiff's claims against other Defendants in addition to the Individual County Defendants (*see infra* Objection 4, pp. 22-24).

quotations and citation omitted). Moreover, even if a plaintiff states a claim under Section 1983, qualified immunity may bar liability. *See Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). Qualified immunity shields government officials in certain circumstances from "civil damages liability as long as their actions could reasonable have been thought consistent with the rights they are alleged to have violated." *Id.* (noting that, "[i]f reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity"). In order to overcome a qualified immunity defense, the plaintiff must allege or show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A court must first determine "whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the offic[ial] violated a clearly established constitutional [or statutory] right." *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). The inquiry ends if the plaintiff fails to allege the defendant violated a constitutional or statutory right. *Id.* If the plaintiff alleges such violation, a court must consider whether the official's conduct was nonetheless objectively reasonable in light of clearly established law at the time of the challenged conduct. *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987).

Here, the Court agrees with the Magistrate Judge that the Individual County Defendants are entitled to qualified immunity because Plaintiff fails to allege violation of a statutory or constitutional right that was clearly established at the time of the challenged conduct (*see* Dkt. #54 at 19-22). Plaintiff's first specific objection focuses on the Magistrate Judge's reliance on *Jefferson* in finding that the Individual County Defendants did not violate Texas Occupation Code § 801.352 because that statute did not apply in the circumstances Plaintiff alleged. Plaintiff objects

that *Jefferson* post-dates the challenged conduct and accordingly cannot answer the question whether the law analyzed therein was clearly established *at the time* of the challenged conduct (Dkt. #59 at 38). The statutory provision at issue prohibits interference with the veterinarian-client relationship. *See* Tex. Occ. Code § 801.352. The statute defines the "client" as "the owner or other caretaker of the animal" and confines the relationship generally to situations where the veterinarian "possesses sufficient knowledge of the animal to initiate at least a general or preliminary diagnosis . . ." and "is readily available to provide, or has provided, follow-up medical care in the event of an adverse reaction to, or a failure of, the regimen of therapy provided by the veterinarian." *Id.* § 801.351. The statute itself excludes from such definition those relationships between veterinarians and their own animals such that a veterinarian who owns an animal cannot also have a veterinarian-client relationship with that animal under this provision. *Id.* § 801.004(1). Texas lawmakers enacted this statute in September 1999, and the most recent modification occurred in September 2011. *See, e.g.*, Tex. S.B. 811, 82nd Leg., R.S. (2011); Tex. H.B. 3155, 76th Leg., R.S. (1999). The legislature did not add or modify the exclusion provision in 2011, and it existed prior to the 2007 amendments to the statute. *See* Tex. S.B. 1562, R.S. (2007). The Court accordingly finds the owner exclusion constituted part of the clearly established law at the time Plaintiff alleges the Individual Defendants violated her rights. As a result, the Individual County Defendants cannot have violated Texas Occupation Code § 801.352 as Plaintiff alleges. Further, the Magistrate Judge did not err in citing *Jefferson*, which merely notes the existence of the owner exclusion in Texas law. *See* 2016 WL 768778, at *2. Because the Court finds *infra* that Plaintiff fails to state an ADAA Title II claim, the Court's finding here that the Individual County Defendants did not violate Texas Occupation Code § 801.352 disposes of Plaintiff's objection regarding the Magistrate Judge's qualified immunity finding. Accordingly, the Individual County

Defendants are entitled to qualified immunity, and Plaintiff's specific objection that Box and/or Brown should be held liable in their supervisory capacities also is overruled.

**Objection 4:   ADAA Finding**

Plaintiff objects to the Magistrate Judge's finding that Plaintiff states no claim under the ADAA against the State of Texas (Dkt. #59 at 12-13).   Specifically, Plaintiff asserts she has sufficiently alleged "the State violated Title II of the [ADAA], by discrimination against her on the basis of her disability" (Dkt. #59 at 13).[11]

ADAA Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (2012).  The Fifth Circuit has held that, in order to state a claim for relief under Title II, a plaintiff must allege "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."  *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).  A plaintiff must allege more than the mere failure to accommodate his or her disability to allege sufficiently that he or she suffered discrimination on account of that disability.  *See Barber v. Maoirana*, No. 14-cv-2227, 2015 WL 5562222, at *10 (W.D. La. June 3, 2015) (dismissing a prisoner's ADAA claims because, *inter alia*, the prisoner alleged only that the prison failed to make special accommodations for his alleged disability).

---

[11] The Court notes Plaintiff raises the same claims based upon the same factual circumstances against various other Defendants in her Amended Complaint (*see* Dkt. #54 at 21-22).  To the extent Plaintiff objects to the Magistrate Judge's findings regard the ADAA to those Defendants, as well, the Court considers those objections herein.

Here, assuming *arguendo* Plaintiff adequately alleges the first two elements of her ADAA Title II claim (*see* Dkt. #54 at 21), Plaintiff nevertheless fails to demonstrate discrimination *by reason of* her alleged disability. Plaintiff's claims under ADAA Title II relate entirely to the Individual County Defendants' alleged failure to provide her accommodation in responding to the animal cruelty complaint (Dkt. #38 at 43 (asserting Defendants should have provided Plaintiff a "citation and time to make changes regarding care of the horses")). Plaintiff seemingly reasons that the failure to provide this accommodation itself shows the Individual County Defendants (and the entities employing them) discriminated against Plaintiff on the basis of her alleged disability. This reasoning blurs the line between a mere failure to accommodate and a failure to accommodate *because of* disability discrimination. It also illustrates why an allegation solely of failure to accommodate does not itself amount to an allegation of discrimination on the basis of disability. *See Barber*, 2015 WL 5562222, at *10. Plaintiff fails to state a claim of disability discrimination under ADAA Title II, as she fails to allege the third element of such a claim. The Court accordingly overrules Plaintiff's objection.

***Objection 5:*** **Heck** *Finding*

Plaintiff asserts in her objections that "[t]he taking[] of the horses is not 'Heck barred'" and that "[t]he destruction of Personal property does not and [sh]ould not" be barred by *Heck*, either (Dkt. #59 at 41). It appears Plaintiff misunderstands the Magistrate Judge's finding with regard to *Heck*'s application in the present case. The Magistrate Judge found that Plaintiff is correct, namely that *Heck* does not bar her claims concerning the alleged takings of the horses and personal property (Dkt. #54 at 24-26). The Magistrate Judge found, in relevant part, as follows:

> The Supervision Order accordingly contemplates removal of the dogs from Plaintiff's custody, but not necessarily the horses and certainly not the personal property. As a result, to the extent Plaintiff seeks damages for the "taking" without due process of her dogs under Section 1983, *Heck* bars such claim: finding the dogs

were seized in violation of Plaintiff's federal constitutional rights would necessarily draw into question the validity of Plaintiff's conviction and/or sentence in violation of *Heck*. But a finding that the personal property and horse seizures violated Plaintiff's due process, equal protection, or Eighth Amendment rights would not necessarily do so, as neither the Judgment nor the Supervision Order clearly indicates removal of either is appropriate.

(Dkt. #54 at 25-26). The Magistrate Judge then noted that the report and recommendation had evaluated Plaintiff's claims regarding the horses and personal property in a preceding section (Dkt. #54 at 26). The Court agrees with the Magistrate Judge that *Heck* does not bar Plaintiff's claims regarding the horses and/or Plaintiff's personal property, given that Plaintiff's conviction and, arguably, aspects of her punishment, namely the requirement that Plaintiff "[c]annot possess any animals[,]" related solely to non-livestock animals (*see* Dkt. #54 at 24-26). The Court overrules Plaintiff's objection.

### Objection 6: The SPCA's Attorney of Record and Personal Jurisdiction

Plaintiff also objects to the Court's ruling on the SPCA Motion to Dismiss both because "the SPCA to Plaintiff's belief, was not served with summons" and because "the attorney that wrote . . . the SPCA's Motion to Dismiss did not file a Notice of Appearance unless it can be shown that he did" (Dkt. #46 at 2, 5). The SPCA responds that "[r]egardless of whether or not Plaintiff properly served the SPCA with summons, insufficient service on the SPCA is not a proper objection for Plaintiff to make" (Dkt. #49 at 3). The SPCA argues, as well, its attorney properly made an appearance on the record in June 2014 and that, in any event, Plaintiff's objection asserting the contrary is irrelevant (Dkt. #49 at 3).

To begin, the SPCA's attorney made an appearance on the record in June 2014 in the case Plaintiff brought (and that the Court later consolidated with the present case) in the Eastern District of Texas, Marshall Division (*see* Dkt. #11 in Eastern District of Texas Case No. 4:14-cv-385). The Court accordingly overrules Plaintiff's objection asserting to the contrary. Further, lack of

personal jurisdiction over a defendant—via failure of service or otherwise—is an argument that the defendant makes, and one which the defendant may waive. *See* Fed. R. Civ. P. 12(h); *see also Stavang v. Am. Potash & Chem. Corp.*, 344 F.2d 117, 118-19 (5th Cir. 1965). The SPCA has waived such argument and, in any event, seeks dismissal on other grounds here. Fed. R. Civ. P. 12(h) (referencing Rule 12(g)(2)). The Court overrules Plaintiff's objection.

**Objection 7:    Alleged Factual Errors by Magistrate Judge in Report and Recommendation**

Plaintiff objects that the Magistrate Judge mischaracterizes Plaintiff's requested relief, erroneously summarizes the facts surrounding the seizure of her horses, and fails to correct and/or relies upon certain characterizations of Plaintiff and the Property allegedly made in the underlying criminal proceedings. The Court considers each objection in turn.

### A.    Magistrate Judge's Characterization of Plaintiff's Requested Relief

Plaintiff takes issue with the Magistrate Judge's characterization of this case as one which "revolves around a conviction of animal cruelty"; Plaintiff objects to this characterization because "this case rightfully revolves around the deprivations of [Plaintiff's] constitutional rights in the takings of [Plaintiff's] horses and [personal property]" (Dkt. #59 at 5). In reviewing the report and recommendation, the Court finds the Magistrate Judge's characterization appropriate, as Plaintiff's claims relate to events that occurred incident to, or temporally proximate to, Plaintiff's conviction. Furthermore, the Magistrate Judge makes clear throughout the report and recommendation that Plaintiff's claims in the present case relate to the taking of her horses and personal property (*see, e.g.*, Dkt. #54 at 2-3, 13-14, 24-26).

### B.    Magistrate Judge's Observation Regarding Seizure of the Horses

Plaintiff objects to the Magistrate Judge's observations that Brown came to the Property on the day the horses were seized and that Plaintiff seemingly alleges she received some amount

of money as compensation for the horses (Dkt. #59 at 7-8).  Plaintiff asserts now that Brown never

was on the Property and that she received no compensation for the horses (Dkt. #59 at 7-8).  But

Plaintiff alleged in her Amended Complaint that "[n]either ACO Officer Misty Brown, nor Danny

Davis followed the manual's protocol" in conducting the horse seizure and, further, that "[t]he

horses were just taken by the county, with $4,300 left to be paid back by [Plaintiff] for the beautiful

grey stallion . . ." (Dkt. #38 at 18-19).  Moreover, Plaintiff asserts as part of her conversion claims

that Brown (and others) converted her horses (Dkt. #38 at 38).  Even were the Court to accept as

true Plaintiff's description of these events in her objections, the result remains the same—she fails

to state a claim upon which relief may be granted.  Accordingly, the Court finds the error, if any,

harmless.

### C.       *Characterization of Plaintiff and the Property*

Plaintiff objects to the Magistrate Judge's failure to correct and/or reliance upon specific

characterizations of Plaintiff and the Property allegedly made in the underlying criminal

proceedings, namely Davis's characterization of Plaintiff as a hoarder (Dkt. #59 at 41-42) and

Davis's representation that dogs on the Property were starving and kept in a "shed," rather than in

a "barn" (*e.g.*, Dkt. #45 at 10-11; Dkt. #46 at 7).  The Court finds upon review of the record that

the Magistrate Judge does not rely upon Davis's allegedly false characterizations of Plaintiff or his

representations of the Property.  Further, the Court finds that these details have no bearing on the

outcome of the present case, which concerns, as Plaintiff alleges, the taking and/or destruction of

Plaintiff's personal property and horses.  The Court notes it discusses Plaintiff's animal cruelty

conviction and the related sentence here only to provide procedural background for the present

proceedings and to evaluate whether Plaintiff's claims are *Heck* barred.  Plaintiff's objection is

overruled.

*Plaintiff's New Claims/Arguments*

As noted, in addition to her specific objections to the Magistrate Judge's report and recommendation, Plaintiff also raises new claims and/or arguments in her objections, namely (a) the Collin County Motion to Dismiss and the SPCA Motion to Dismiss were untimely filed and, accordingly, Plaintiff should receive default judgment against all Collin County Defendants[12]; (b) the Collin County Defendants consented to suit when they sought to transfer and/or consolidate Plaintiff's second-filed action in the Eastern District of Texas, Marshall Division, with the present case; and (c) the Magistrate Judge should be recused or disqualified for demonstrating bias against Plaintiff (Dkt. #59 at 9-10, 32).[13]

## A.     *Untimely Filed Motions and Request for Default*

Plaintiff argues that because she filed the Amended Complaint in the instant case on May 26, 2015, the SPCA and Defendants Collin County Sheriff's Department, Davis, Driver, Brown, Kirk, and Ware had until June 9, 2015 (fourteen days later) to respond under the Federal Rules of Civil Procedure (Dkt. #59 at 9-10). Plaintiff further asks the Court to grant default judgment against each of Defendants Collin County Sheriff's Department, Davis, Driver, Brown, Kirk, and Ware for their failure promptly to respond to the Amended Complaint (Dkt. #59 at 10-11).

---

[12] Plaintiff does not define "Collin County Defendants." The Court presumes Plaintiff intends through this reference to capture all Defendants employed by Collin County and/or the City of Lucas, such as the Individual County Defendants, as well as Collin County and the City of Lucas (and related entities, such as the Collin County Sheriff's Department).

[13] Plaintiff dedicates a section of her objections to "Prosecutorial Liability" wherein she raises wholly new allegations regarding the prosecutor in the underlying criminal proceedings, as well as against two new persons not previously named (Dkt. #59 at 33-34). Plaintiff failed to raise or even suggest the existence of such claims in any of her pleadings before the Magistrate Judge. The Court declines to consider these allegations now. *See, e.g.*, *Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 2d 747, 752 (E.D. Tex. 2013) (finding claims not presented before the magistrate judge waived before the district court).

As an initial matter, the Court finds default inappropriate in this case. A default judgment cannot be taken against any unserved Defendants (such as Collin County). *See, e.g.*, *Robinson v. City of Houston*, No. H-11-0654, 2011 WL 1806427, at *1 (S.D. Tex. May 11, 2011) (quoting *Md. State Firemen Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996), which noted "[i]t is axiomatic that service of process must be effective . . . before a default or a default judgment may be entered against a defendant"). Moreover, as to the served Defendants, namely Davis, Driver, Kirk, Collin County Sheriff's Department, Brown, Ware, and the SPCA, each have filed timely answers and/or responsive pleadings in this case, precluding a finding that any of them have defaulted.

As to the Defendants' alleged untimeliness, Federal Rule of Civil Procedure 12 prescribes a twenty-one-day period in which a defendant must serve a responsive pleading to a plaintiff's summons or complaint. Fed. R. Civ. P. 12(a)(1)(A). The clock begins to run on this period when the defendant receives the summons and/or complaint. *Id.* Responsive pleadings include answers to the complaint, as well as motions to dismiss pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 7-8. Importantly, if a defendant raises a defense in its timely answer to a plaintiff's complaint, courts generally allow a later Rule 12(b)(6) motion raising the same defense. *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999). Courts permit such motions because the timely filed answer provides the requisite notice to the plaintiff of the defense later raised in the motion to dismiss. *Id.*; *see also Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *9 (E.D. Tex. Dec. 27, 2006) ("[I]f the defendant has previously included in the answer the defense raised in the Rule 12(b)(6) motion, thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer[] . . . ."). Further, a defendant need not re-assert defenses through a new motion to dismiss in response to a plaintiff's amended pleading absent court order, particularly where "defects raised in the original [pleading] remain in the new pleading[] . . . ."

*Jordan v. City of Phila.*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) (quoting 6 Charles A. Wright,

Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1476 at 558 (2d ed.1990)

(in turn collecting cases)).  And a defendant may file a Rule 12(b)(6) motion as late as trial.  Fed.

R. Civ. P. 12(h)(2); *Horwitz v. Food Town, Inc.*, 241 F. Supp. 1, 2 (E.D. La. 1965); *Iturralde v.*

*Shaw Grp., Inc.*, No. 50-330, 2012 WL 1565356, at *3 (M.D. La. May 1, 2012).  On the other

hand, a plaintiff's failure to brief an argument in the plaintiff's response to a motion to dismiss

generally results in waiver of such argument.  *See, e.g.*, *Knudsen v. Bd. of Sup'rs of Univ. of La.*

*Sys.*, No. 14-382, 2015 WL 1757695, at *1 (E.D. La. Apr. 16, 2015) (finding plaintiff's failure to

brief certain arguments in response to defendant's motion for summary judgment waived those

arguments); *Mayo v. Halliburton Co.*, No. H–10–1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct.

26, 2010) (finding plaintiff's failure to respond to defendants' argument in their motion to dismiss

that plaintiff's breach of contract claim be dismissed waived plaintiff's argument on that point).

As noted *supra*, Plaintiff filed two lawsuits in this case, one presently pending before the

Court (the "Present Case") and one before the Court's Marshall Division that the Court later

consolidated with the Present Case (the "Consolidated Case").  Prior to consolidation, Defendants

Brown, Davis, Driver, Kirk, and Ware filed an answer to Plaintiff's complaint in the Consolidated

Case asserting, *inter alia*, a qualified immunity defense (Dkt. #10 in Eastern District of Texas Case

No. 4:14-cv-385).  Also prior to consolidation, Defendant the SPCA filed a motion to dismiss in

the Consolidated Case (Dkt. #11 in Eastern District of Texas Case No. 4:14-cv-385) substantially

identical to the SPCA Motion to Dismiss filed in the Present Case (*see* Dkt. #39).

In addition, after consolidation, the SPCA clearly filed its instant motion to dismiss in the

Present Case within twenty-one days of service, as the SPCA filed the Motion to Dismiss on the

twenty-first day following Plaintiff's filing of the Amended Complaint (Dkt. #39).  No argument

can be made the motion is untimely. Plaintiff also filed no response to the SPCA Motion to Dismiss, and Plaintiff does not argue in her objections (Dkts. #45-46) to the February 5, 2016 report and recommendation (Dkt. #42) that the SPCA Motion to Dismiss was untimely filed.

Defendants Brown's, Davis's, Driver's, Kirk's, and Ware's answer in the Consolidated Case appears to have been timely filed, as well,[14] and therein these Defendants argue in addition to their asserted immunity defenses that Plaintiff fails to state a claim upon which relief may be granted (Dkt. #10 in Eastern District of Texas Case No. 4:14-cv-385). Plaintiff's subsequent filing of the Amended Complaint in the Present Case following consolidation does not render such arguments null or untimely. *See, e.g.*, *Jordan*, 66 F. Supp. 2d at 641 n.1. Further, as to Plaintiff's alleged failure to state a claim, Rule 12(h)(2) expressly permits filing of a motion to dismiss on the basis of failure to state a claim as late as trial, particularly where the defendant already has filed an answer or other responsive pleading. *See Horwitz*, 241 F. Supp. at 2; *Iturralde*, 2012 WL 1565356, at *3. Additionally, Plaintiff raised no argument regarding the timeliness of Defendants Brown's, Davis's, Driver's, Kirk's, Ware's, and Collin County Sheriff's Department's Motion to Dismiss in her responses to that motion (*see* Dkt. #43; Dkt. #50). Because the failure to brief an argument in response to such a motion results in waiver of that argument, the Court finds Plaintiff waived the timeliness argument with regard to each of the instant motions to dismiss. *See, e.g.*, *Mayo*, 2010 WL 4366908, at *5 (finding waiver and granting motion to dismiss breach of contract claim where plaintiff failed to respond to defendants' arguments made in motion to dismiss).

Even assuming either motion was untimely, the result herein would remain unchanged. Because Plaintiff's failure to state a claim against these Defendants merits dismissal under Section 1915, whether Defendants timely filed a motion to dismiss or answer in this case has no bearing

---

[14] Summons were issued as to Brown, Davis, Driver, Kirk, and the SPCA, among others, on May 9, 2014, but the record does not reflect when or whether those summons were executed.

on the Court's determination that Plaintiff, who proceeds here *in forma pauperis*, states no claim for relief under the heightened Section 1915 standard. 28 U.S.C. § 1915(e)(2)(B); *see also Potts v. Texas*, 354 F. App'x 70, 71 (5th Cir. 2009) (per curiam) ("The district court shall dismiss a case filed IFP at any time if the complaint is frivolous or malicious.") (citing *Siglar*, 112 F.3d at 193, which notes that "frivolous" complaints are those that "lack[] an arguable basis in law or fact"). Indeed, the Court has an independent obligation under Section 1915 to screen *in forma pauperis* complaints such as Plaintiff's, and may do so "at any time" the Court finds the action is frivolous or malicious, or if the plaintiff otherwise fails to state a claim on which relief may be granted. *See Kenechukwu*, 2016 WL 3961714, at *1. The Court has found as much regarding Plaintiff's claims against each of the named Defendants, including specifically Defendants Collin County Sheriff's Department, Davis, Driver, Brown, Kirk, Ware, and the SPCA in its analysis *supra*. The Court accordingly overrules Plaintiff's objection.

### B.      Consent to Suit

Plaintiff also asserts that the Collin County Defendants, in seeking venue transfer (and consolidation) of this case, "consented to the suit . . . and waived their 11th Amendment immunity" (Dkt. # 59 at 32). Plaintiff alludes to the *Ex Parte Young* doctrine and cites related cases in support of this argument. Presumably Plaintiff argues the State of Texas has thereby rendered itself amenable to her lawsuit, as the Magistrate Judge (correctly) discussed the Eleventh Amendment only with regard to the State.

Indeed, the Magistrate Judge thoroughly outlined the law of Eleventh Amendment immunity to suit and the accompanying consent exception in the report and recommendation (*see* Dkt. #54 at 21-23). The Magistrate Judge then concluded that Plaintiff failed to allege the State of Texas had in any way consented to suit under the law, and that "Plaintiff names no individual

representative of the State against whom she might raise claims under *Ex Parte Young*" (Dkt. #54 at 23). Plaintiff's objections remedy neither of these deficiencies. In the Section 1983 context, and relying on its Eleventh Amendment precedents, the U.S. Supreme Court has distinguished clearly between municipalities and their representatives on the one hand and the state and its representatives on the other. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 62-64, 66-67 (1989); *see also Monell*, 436 U.S. at 690. The *Will* Court found that the State is not a "person" within the meaning of Section 1983 and, accordingly, is not subject to suit under that statute. *Will*, 491 U.S. at 64. Likewise, the *Monell* Court relied in part on the idea that "[t]here is certainly no constitutional impediment to municipal liability" in determining Section 1983 contemplates claims against municipalities. 436 U.S. at 690 n.54. By the same logic, and because counties are not considered part of the State, the acts of municipalities and their agents, whether in litigation or otherwise, cannot serve as a basis for abrogating the State's Eleventh Amendment immunity to suit. *See Williams v. Kaufman Cty.*, No. 3:97–CV–0875–L, 1998 WL 34190569, at *2 (N.D. Tex. Sept. 18, 1998) (citing *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). Accordingly, the Court overrules Plaintiff's objection.

### C.     *Magistrate Judge's Bias*

Plaintiff objects, as well, that the Magistrate Judge exhibits bias because the Magistrate Judge has not experienced the same alleged destruction of property as Plaintiff claims she has experienced (Dkt. #59 at 5-6). Plaintiff further asserts the Magistrate Judge's recitation of "false material facts" proves this bias (Dkt. #59 at 6). Plaintiff seeks the Magistrate Judge's "disqualification" or recusal (Dkt. #59 at 7). The Court already has addressed Plaintiff's contentions regarding the Magistrate Judge's recitation of the facts of this case in its analysis *supra*; accordingly, the Court will address only Plaintiff's bias claims here.

Judges should recuse themselves from adjudicating a case where they "exhibit [such] high level of animosity [as] would render a fair judgment impossible." *Opiyo v. Musgrave*, 574 F. App'x 491, 493 (5th Cir. 2014) (per curiam) (citing *United States v. Mizell*, 88 F.3d 288, 299 (5th Cir. 1996)). A party must produce a "timely and sufficient affidavit" evincing a judge's "personal bias" in order to properly seek recusal. *Douglas v. Houston Hous. Auth.*, 587 F. App'x 94, 98 (5th Cir. 2014) (per curiam) (quoting 28 U.S.C. § 144). Section 144 of 28 U.S.C. provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. Some of the grounds for recusal of a judge are stated in 28 U.S.C. § 455 and include the following:

> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> **(b)** He shall also disqualify himself in the following circumstances:
> **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .

28 U.S.C. § 455(a)-(b). Thus, an affidavit suffices to make the requisite showing where it demonstrates "facts . . . such that, if true, . . . would convince a reasonable person that bias exists," and "facts [that would] show the bias is personal, as opposed to judicial[,] in nature." *Id.* (quoting *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of Miss.*, 637 F.2d 1014, 1019 (5th Cir. 1981)). The party seeking recusal must show a "deep-seated favoritism or

antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). With or without such affidavit, however, judges should still recuse themselves where "[their] impartiality might reasonably be questioned[,]" i.e., where "a well-informed, thoughtful and objective observer would question the court's impartiality." *Douglas*, 587 F. App'x at 98 (quoting *Republic of Panama v. Am. Tobacco Co.*, 217 F.3d 343, 346 (5th Cir. 2000)) (quotations omitted). This would be the case where "the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 877 (2009) (quotations omitted). To determine whether such probability exists, courts should ask "not whether the judge is actually, subjectively biased, but whether the average judge in [the same] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Id.* at 881.

In the present case, Plaintiff fails to show the Court should require the Magistrate Judge's recusal and/or disqualification. To begin, Plaintiff proffers no affidavit showing the Magistrate Judge harbors impermissible bias regarding Plaintiff's case. And even were the Court to consider Plaintiff's objections as such, Plaintiff still fails to show the Magistrate Judge's bias. Plaintiff asserts that, because the Magistrate Judge has not endured the same wrongs Plaintiff alleges she has in this case, namely destruction of cherished personal property by Defendants, the Magistrate Judge's recommendation that Plaintiff's claims be dismissed demonstrate the Magistrate Judge's bias (Dkt. #59 at 5). Given the Magistrate Judge's detailed analysis of the facts (as Plaintiff alleges them) and the Magistrate Judge's citation to and application of the law governing Plaintiff's claims, however, the Court finds no reasonable observer would question the Magistrate Judge's impartiality on these grounds. Further, upon review of the record, the Court finds no indication of any favoritism or antagonism towards any Party on the Magistrate Judge's part or even the

appearance of same. Plaintiff fails to demonstrate the Magistrate Judge harbors any impermissible bias or that the Magistrate Judge has in any way demonstrated partiality in this case. The Court overrules Plaintiff's objection.

## CONCLUSION

Having considered each of Plaintiff's objections (Dkts. #45-46; Dkt. #59) and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's reports (Dkt. #42; Dkt. #54) as the findings and conclusions of the Court.

Accordingly, it is **ORDERED** that Plaintiff's Amended Complaint (Dkt. #38) is **DISMISSED**, and Plaintiff's claims are **DISMISSED** with prejudice.

All relief not previously granted is **DENIED**.

The Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED**.

 **SIGNED this 29th day of March, 2017.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE